J-A20039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DOUGLAS L. GUNTRUM, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CITICORP TRUST BANK | : | No. 1714 WDA 2015 |

Appeal from the Order September 28, 2015
in the Court of Common Pleas of Clarion County,
Civil Division, No(s): 484 C.D. 2009

BEFORE: BOWES, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 19, 2016**

Douglas L. Guntrum ("Guntrum") appeals from the Order granting the Motion for summary judgment ("the Summary Judgment Order") filed by Citicorp Trust Bank ("Citicorp"), following the trial court's May 20, 2010 Order ("the Order to Open"), which opened the default judgment previously entered in favor of Guntrum and against Citicorp. We reverse the Summary Judgment Order and the Order to Open, and remand for the re-entry of the default judgment in favor of Guntrum.

The trial court set forth the relevant history underlying this appeal as follows:

> [Guntrum] filed a Complaint … [against Citicorp] on April 6, 2009. In his Complaint, [Guntrum] alleged [that Citicorp] did not honor a credit disability insurance policy [(hereinafter "the insurance policy")]. According to [Guntrum], he purchased the insurance policy from [Citicorp] at the same time he secured a

mortgage from [Citicorp] in January of 2003.[1]  The insurance policy was meant to [provide a temporary waiver of Guntrum's required] mortgage payments if he became disabled.  [Guntrum] alleged in his [C]omplaint that [Citicorp] did not honor th[e insurance] policy when he … bec[a]me disabled in November of 2005[, after he was diagnosed with epilepsy and other neurological disorders].  As a result of [Citicorp's] refusal to honor the insurance policy, [the Property] was foreclosed upon, [and Guntrum therefore lost all of his equity in the Property.] [Citicorp subsequently] purchased the [Property] at [a] sheriff's sale.  [In his Complaint, Guntrum] claimed relief for breach of contract, unfair trade practice[s], and bad faith refusal of insurer to pay [(hereinafter, "the bad faith count")].

[Guntrum] attempted to serve the Complaint on [Citicorp] at 3001 Meacham Boulevard, Suite 200, PO Box 2548, Fort Worth, Texas 76113.[2]  However, service was returned as not found.  A deputy sheriff of Tarrant County, Texas indicated that [Citicorp] was not located at that address as of April 15, 2009, and [the sheriff] did not have access to [Citicorp].  The return of service was filed with th[e trial] court [in the instant matter] on April 20, 2009.

[Guntrum] filed an Amended Complaint on July 10, 2009. The Amended Complaint alleged the same facts as the initial [C]omplaint.  It was served upon [Citicorp on July 28, 2009, by personal service of an employee of Citicorp,] at 4500 New Linden Hill Road, 3rd Floor, Wilmington, Delaware 19808 [(hereinafter "Citicorp's Delaware Office")].  [Significantly, Citicorp] did not respond to the Amended Complaint.  [Guntrum filed a] Ten-Day Notice of Default Judgment … on October 21, 2009 [(hereinafter "First Ten-Day Notice")], and served [it] upon [Citicorp at Citicorp's] … Delaware [Office, by certified mail].  A second Ten-Day Notice of Default Judgment [(hereinafter "Second Ten-Day Notice")] was filed on November 3, 2009, and served upon

---

[1] The mortgage, in the amount of $47,478.80, was secured by Guntrum's residence, located in New Bethlehem (hereinafter "the Property").  Guntrum used the mortgage funds to make improvements to the Property.  After the improvements, the Property was appraised at $115,000.

[2] It appears that Guntrum obtained this address from correspondence that he had previously received from Citicorp concerning the insurance policy. *See* Brief in Opposition to Petition to Open, 3/23/10, Exhibit A.

[Citicorp] at [Citicorp's] … Delaware [Office, by certified mail]. [Guntrum] filed a[] Praecipe for Entry of a Default Judgment on November 16, 2009 [(hereinafter "the Praecipe for Default Judgment"), and served it upon a Citicorp employee at Citicorp's Delaware Office, Roselyn Benson ("Ms. Benson")[3]].

Trial Court Opinion and Order, 5/21/10, at 1-2 (footnotes added).

Citicorp filed no response to either of the Ten-Day Notices or the Praecipe for Default Judgement. By an Order entered on November 23, 2009 (hereinafter "the Default Judgment Order"), the trial court directed the Prothonotary to enter a default judgment against Citicorp, and scheduled a non-jury trial, solely on the issue of damages, for February 5, 2010. The trial court ordered Guntrum to again serve Citicorp with a copy of the Praecipe for Default Judgment, as well as the Default Judgment Order (hereinafter collectively referred to as "the Default Filings"), by personal service or certified mail. On December 8, 2009, Guntrum filed an Affidavit of Service, stating that he had served the Default Filings upon a Citicorp employee at Citicorp's Delaware Office, via certified mail.[4] Thereafter, on January 15, 2010, Guntrum filed a second Affidavit of Service, stating that

---

[3] The record does not reveal what position Ms. Benson holds at Citicorp.

[4] Though Guntrum did not attach a certified mail receipt to this Affidavit of Service, he attached it to a subsequent filing, showing that Ms. Benson had accepted service of the Default Filings, at Citicorp's Delaware Office, on December 11, 2009. **See** Brief in Opposition to Petition to Open, 3/23/10, Exhibit E; **see also** Trial Court Opinion and Order, 5/21/10, at 5, ¶ 17.

the Default Filings had been personally served upon Ms. Benson, at Citicorp's Delaware Office, on January 11, 2010.[5]

At the damages trial on February 5, 2010, neither Citicorp nor its counsel was present. By an Order entered on March 12, 2010, the trial court awarded Guntrum compensatory damages in the amount of $125,558.[6]

In the interim, on February 26, 2010, Citicorp's local counsel in Pennsylvania filed a Praecipe for Entry of Appearance. On March 4, 2010, Citicorp filed a Petition to Open Default Judgment (hereinafter "Petition to Open"). Therein, Citicorp conceded that one of its employees had accepted service of the Amended Complaint at Citicorp's Delaware Office. Petition to Open, 3/4/10, ¶ 4. Importantly, Citicorp asserted that, pursuant to its regular policies and procedures, the Amended Complaint should have then been forwarded, via overnight mail, to Citicorp's legal department, which was located in Irving, Texas (hereinafter "the Legal Department"). *Id.* at ¶ 7. However, Citicorp averred that the Legal Department had no record of ever receiving the Amended Complaint. *Id.* at ¶¶ 6, 9. Additionally, Citicorp acknowledged Guntrum's service of the Second Ten-Day Notice at Citicorp's Delaware Office, but asserted that the Legal Department again had no record of ever receiving this document. *Id.* at ¶¶ 10-11. Citicorp further

---

[5] Guntrum attached thereto a notarized affidavit by the process server.

[6] The trial court declined to award Guntrum requested punitive damages, treble damages, or attorneys' fees.

acknowledged Guntrum's service of the Default Filings, upon Citicorp employees at Citicorp's Delaware Office. *Id.* at ¶¶ 12-17. According to Citicorp, however, *the Legal Department did not become aware of the action against it, or any of the above-mentioned filings, until February 10, 2010*, "*due to a clerical error/oversight*[,] and despite proper procedures in place regarding the routing and service of all court filings …." *Id.* at ¶ 28 (emphasis added); *see also id.* at ¶ 18. Finally, Citicorp pointed out that it filed the Petition to Open 22 days after the Legal Department had become aware of the action on February 10, 2010. *Id.* at ¶ 20.

On May 10, 2010, the trial court conducted a hearing on the Petition to Open and an Answer thereto filed by Guntrum. On May 21, 2010, the trial court entered the Order to Open, along with an accompanying Opinion, finding that Citicorp had established all of the requirements for opening a default judgment.[7] Accordingly, the trial court vacated the non-jury award in favor of Guntrum and permitted Citicorp to file an Answer and New Matter in response to Guntrum's Amended Complaint. Citicorp filed its Answer and New Matter on May 28, 2010.

In September 2010, Citicorp filed a partial Motion for judgment on the pleadings, seeking dismissal of the bad faith count in Guntrum's Amended Complaint, asserting, *inter alia*, that it was barred by the two-year statute of

---

[7] On June 17, 2010, Guntrum timely filed a Notice of Appeal from the Order to Open. However, this Court subsequently discontinued the appeal, in response to Guntrum's filing a "Praecipe to Strike Appeal."

limitations. By an Opinion and Order entered on November 30, 2010, the trial court granted Citicorp's Motion and dismissed the bad faith count.

In the ensuing five years, the parties extensively litigated the remaining two counts in the Amended Complaint: breach of contract and unfair trade practices. On July 6, 2015, Citicorp filed a Motion for summary judgment, seeking the dismissal of Guntrum's remaining claims. By the Summary Judgment Order entered on September 28, 2015, the trial court granted the summary judgment Motion, following a hearing. The court determined, in sum, that Citicorp had not breached the insurance policy and did not defraud or deceive Guntrum. Guntrum timely filed a Notice of Appeal.[8] Guntrum thereafter filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement, wherein he alleged trial court error in previously opening the default judgment. In response, the trial court issued a Pa.R.A.P. 1925(a) Opinion, relying upon its rationale set forth in the May 21, 2010 Opinion and Order in rejecting Guntrum's challenges to the Order to Open.

Guntrum now presents the following issues for our review:

[1.] Did the trial court show a manifest abuse of discretion and/or error of law when it considered notification of [the] [L]egal [D]epartment when determining promptness for [Citicorp's] Petition to Open []?

[2.] Did the trial court show a manifest abuse of discretion and/or error of law when it excused [Citicorp's] failure to file a

---

[8] Pursuant to Pa.R.A.P. 311(a)(1), an appeal from an order opening a default judgment may not be filed until the trial court disposes of all claims for relief. Here, the trial court resolved all of Guntrum's claims for relief via the Summary Judgment Order.

responsive pleading after six notifications of legal proceedings against it?

Brief for Appellant at 7 (issues numbered).[9]  We will address Guntrum's

issues together, as they are related.

When reviewing whether a trial court erred or abused its discretion in

granting a petition to open a default judgment, we have explained as

follows:

> [A] petition to open a default judgment is an appeal to the equitable powers of the court, and absent an error of law or a clear, manifest abuse of discretion, it will not be disturbed on appeal.  An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment [that] is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will.

*Myers v. Wells Fargo Bank, N.A.*, 986 A.2d 171, 175 (Pa. Super. 2009)

(citation omitted).

> [A] default judgment may be opened if the moving party has (1) promptly filed a petition to open the default judgment [(hereinafter "the first prong")], (2) provided a reasonable excuse or explanation for failing to file a responsive pleading [(hereinafter "the second prong")], and (3) pleaded a meritorious defense to the allegations contained in the complaint.  Moreover, … [a] trial court cannot open a default judgment based on the "equities" of the case when the defendant has failed to establish all three of the required criteria.

*Id.* at 175-76 (internal citations and footnote omitted).  All "three factors [of

the above-mentioned test] … must coalesce before a default judgment can

---

[9] We observe that Guntrum phrased these issues somewhat differently in his court-ordered Rule 1925(b) Concise Statement.  Nevertheless, we determine that the issues are properly preserved for our review.

be opened." *McCoy v. Pub. Acceptance Corp.*, 305 A.2d 698, 700 (Pa. 1973).

We will simultaneously address the first and second prongs, mindful of the following:

> The timeliness of a petition to open a judgment [under the first prong] is measured from the date that notice of the entry of the default judgment is received. The law does not establish a specific time period within which a petition to open a judgment must be filed to qualify as timel[y]. Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for [the] delay.

*Myers*, 986 A.2d at 176 (citation omitted). "In evaluating whether the petition has been promptly filed, the Court does not employ a bright line test …." *Allegheny Hydro No. 1 v. Am. Line Builders*, 722 A.2d 189, 193 (Pa. Super. 1998) (citation, brackets and internal quotation marks omitted)).

> In cases where the appellate courts have found a "prompt" and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month. *See Duckson v. Wee Wheelers, Inc.*, 423 Pa.Super. 251, 620 A.2d 1206 (Pa. Super. 1993) (one day is timely); *Alba v. Urology Associates of Kingston*, 409 Pa.Super. 406, 598 A.2d 57 (Pa.Super. 1991) (fourteen days is timely); *Fink v. General Accident Ins. Co.*, 406 Pa.Super. 294, 594 A.2d 345 (Pa. Super. 1991) (period of five days is timely).

*Myers*, 986 A.2d at 176; *see also Pappas v. Stefan*, 304 A.2d 143, 146 (Pa. 1973) (holding that 55-day delay is not prompt); *U.S. Bank N.A. v. Mallory*, 982 A.2d 986, 995 (Pa. Super. 2009) (holding that 82-day delay is not prompt); *Dumoff v. Spencer*, 754 A.2d 1280, 1282-83 (Pa. Super. 2000) (holding that four-month delay is not prompt); *Flynn v. Amer. W.*

*Airlines*, 742 A.2d 695, 698 (Pa. Super. 1999) (noting that delays of fewer than three weeks may be deemed insufficiently prompt); *Allegheny Hydro No. 1*, 722 A.2d at 194 (holding that 41-day delay is not prompt); *B.C.Y., Inc. Equipment Leasing Assocs. v. Bukovich*, 390 A.2d 276, 279 (Pa. Super. 1978) (holding that 21-day delay is not prompt); *Quatrochi v. Gaiters*, 380 A.2d 404, 408-09 (Pa. Super. 1977) (holding that 63-day delay is not prompt).

With regard to the second prong, "[w]hether an excuse is legitimate is not easily answered and depends upon the specific circumstances of the case. The appellate courts have usually addressed the question of legitimate excuse in the context of an excuse for failure to respond to the original complaint in a timely fashion." *Myers*, 986 A.2d at 176 (citation omitted). "Excusable negligence must establish an oversight rather than a deliberate decision not to defend." *Seeger v. First Union Nat. Bank*, 836 A.2d 163, 167 (Pa. Super. 2003) (citation omitted); *see also Flynn*, 742 A.2d at 699 (stating that "where the failure to answer was due to an oversight, an unintentional omission to act, or a mistake of the rights and duties of the appellant, the default judgment may be opened." (citation omitted)). However, "[w]hile some mistakes will be excused, mere carelessness will not be." *Bahr v. Pasky*, 439 A.2d 174, 177 (Pa. Super. 1981) (internal citation omitted).

Before addressing Guntrum's claims, we set forth the trial court's reasoning in its Opinion wherein in determined that the first and second prongs were met:

[Citicorp] took twenty-two days to file the Petition [to Open] after receiving notice of the default judgment. The [D]efault [J]udgment [Order] was signed on November 19, 2009[,] and filed with the Prothonotary's Office on November 23, 2009. [Guntrum] mailed a copy of the [Default Judgment O]rder to [Citicorp, at Citicorp's Delaware Office,] on December 7, 2009. [Ms.] Benson signed for the service of the [Default Judgment O]rder on December 11, 2009. [Guntrum] re-served the [Default Judgment O]rder by process server, which served Ms. Benson[, at Citicorp's Delaware Office,] on January 11, 2010. However, according to [Citicorp], neither of these [] [O]rders reached [the] [L]egal [D]epartment in Texas until February 10, 2010. The [] Petition [to Open] was filed on March 4, 2010. Therefore, *the earliest possible notice [Citicorp] received of the default judgment would have been on December 11, 2009, after which eighty-three days passed before the [] Petition [to Open] was filed*. The [L]egal [D]epartment did not receive notice until February 10, 2010, after which twenty-two days passed before the [] Petition [to Open] was filed. *Th[e trial] court finds that the twenty-two day period from February 10, 2010[,] to March 4, 2010 is the relevant period of delay*. [Pennsylvania case law] require[s] the court to consider the[] "length of the delay between **discovery** of the entry of a default judgment and filing the petition to open judgment." ***Allegheny Hydro No. 1***, [722 A.2d at 193 (emphasis added by trial court)]. [*Citicorp*] *did not discover the entry of default judgment until* [*the L*]*egal* [*D*]*epartment in Texas received notice*. Once [the] [L]egal [D]epartment was made aware of the present civil action on February 10, 2010, [Citicorp] had to file something as quickly as possible. [Citicorp] cannot be expected to file a petition prior to becoming aware of the lawsuit.

[Citicorp] promptly filed the Petition to Open []. The delay of only twenty-two days was not caused by [Citicorp's] neglect or lack of due diligence. [The Legal Department's] [i]n[-]house counsel in Irving, Texas was notified of the lawsuit on February 10, 2010. [Citicorp's local] counsel was then contacted. [Citicorp's local] counsel received a copy of the Amended

- 10 -

Complaint on February 17, 2010[,] from [Guntrum's] attorney. Therefore, [Citicorp] hired outside counsel to represent its interest in Clarion County, Pennsylvania within ten days of receiving notice of the suit in Texas. [Citicorp's local] counsel filed with [the trial] court a Praecipe for Entry of Appearance on February 26, 2010, dated by counsel as February 23, 2010. [Citicorp] faxed a letter to th[e trial] court on February 25, 2010[,] indicating its intent to file a Petition to Open Default Judgment within the next few days. [Citicorp's local] counsel also sent letters to [Guntrum's] counsel requesting information pertinent to this action on February 23 and 26, 2010. [Citicorp] received a copy of the record from the Clarion County Prothonotary's Office on February 23, 2010. [Citicorp] conducted an internal investigation from February 10, 2010[,] to March 3, 2010[,] to determine the reason it had not been made aware of the present action. The [] Petition [to Open] was filed on March 4, 2010. …

Considering the information included in [the] Petition [to Open] and [Citicorp's] brief, the short period of time which it had to examine the filings in this case, and the speed with which it hired local counsel, th[e trial] court finds [that Citicorp] promptly filed the [] Petition [to Open] by filing it within twenty[-]two days of becoming aware of the default judgment.

* * *

In the present case, [Citicorp] was not aware of the action until February 10, 2010[,] *due to a clerical error*. [Citicorp's] policy is to receive legal documents from [Citicorp's] Delaware [O]ffice by overnight mail to the [L]egal [D]epartment in Irving, Texas. The mail is then sorted and sent to the appropriate in-house counsel. However, the [L]egal [D]epartment … has no record of ever receiving the Amended Complaint, either [] the [First] Ten[-]Day Notice[] [or the Second Ten-Day Notice] …, or any Affidavits of Service. The only document received *by the* … [*L*]*egal* [*D*]*epartment* was the Praecipe to Enter Default Judgment and corresponding [Default Judgment] Order …, which was received on February 10, 2010. Upon an internal investigation [that Citicorp] conducted …, it was found that the delay in assigning the lawsuit that resulted in the default judgment was caused by a clerical error or oversight. [Citicorp] did not deliberately delay this case by failing to respond to the pleadings. …

* * *

> [Citicorp] has presented a reasonable explanation for not filing responsive pleadings in the present case. [Citicorp] was oblivious to the lawsuit due to a failure in [Citicorp's] Delaware [O]ffice to forward the filings in this case to [the Legal Department in Texas]. Such clerical error or oversight was not intentional or strategic in any way, but simply an unfortunate happening. Such mistakes are excusable under Pennsylvania case law. [Citicorp] has satisfied its burden under [the second] prong … by establishing a reasonable excuse for its lack of a response to [Guntrum's] Amended Complaint.

Trial Court Opinion and Order, 5/21/10, at 9-12, 14 (emphasis added, some citations omitted).

Guntrum argues that the trial court erred and/or abused its discretion in determining that Citicorp met the first prong, as the Petition to Open was not promptly filed. Brief for Appellant at 12. According to Guntrum, the trial court overlooked that, on December 11, 2009, and January 11, 2010, Citicorp was twice served with the Default Filings, at Citicorp's Delaware Office, but Citicorp did not file the Petition to Open until 83 days after December 11, 2009. *Id.* Guntrum argues that the trial court improperly

> adopt[ed] the position of [Citicorp] that it is not service upon [Citicorp] that counts for purposes of computing the date of discovery of the default judgment, but rather[,] the date [that the L]egal [D]epartment [] [wa]s made aware of the default judgment. This manufactures a time frame of twenty-two days …. The trial court's exception is wholly without statutory or case law support. [Citicorp's] [] assertion that [the] Petition to Open … was prompt in relation to when [the L]egal [D]epartment received it has no authority to bolster it. If this proposition were permitted to stand, it would carve out an exception that would grossly favor corporations large enough to have a legal division.

*Id.* (paragraph break and citation omitted); *see also id.* at 10 (asserting that "[n]o statute or case law supports the proposition that a specific entity other than the named party to a lawsuit needs [to be] notified to satisfy service requirements.").

Concerning the second prong, Guntrum asserts that the trial court erred in finding that Citicorp met this prong by advancing a legitimate excuse for its delay in responding to the Amended Complaint. *See id.* at 13-16. Guntrum emphasizes that it is undisputed that Citicorp was served with Guntrum's following filings (hereinafter collectively referred to as "the Served Filings") at Citicorp's Delaware Office: (1) the Amended Complaint; (2) the First Ten-Day Notice; (3) the Second Ten-Day Notice; (4) the Praecipe for Default Judgment; and (5) the Default Filings, on two separate occasions. *Id.* at 14. Guntrum contests the trial court's acceptance of Citicorp's excuse for its failure to respond to any of the Served Filings (until the Legal Department became aware of the action on February 10, 2010), *i.e.*, that the delay was attributable to a "clerical error." *Id.* at 15 (citing Trial Court Opinion and Order, 5/21/10, at 11); *see also* Petition to Open, 3/4/10, ¶ 28. According to Guntrum, this excuse is not legitimate, as "[i]t is an impossibility for one clerical error to answer for [Citicorp's failure to respond to] six separate notifications of legal proceedings[,] spread out over six [] months." Brief for Appellant at 15.

Concerning the first prong, we conclude that the trial court erred in its determination that Citicorp's delay in filing the Petition to Open was only 22 days. It is undisputed that Citicorp received all of the Served Filings at Citicorp's Delaware Office, and that it first received notice of the default judgment entered against it on December 11, 2009 (*i.e.*, 83 days prior to Citicorp's filing of the Petition to Open). Though the trial court found that the relevant date for purposes of calculating the delay was when *the Legal Department* first became aware of the default judgment, *i.e.*, February 10, 2010, we discern no support for such a proposition. We are persuaded by Guntrum's argument that, were we to hold otherwise, this would unjustly create an exception for corporate defendants large enough to have a separate legal department. We conclude that Citicorp's 83-day delay in filing the Petition to Open was not prompt, and the trial court erred in finding to the contrary and calculating the delay as being only 22 days. ***See***, ***e.g.***, ***U.S. Bank N.A.***, ***supra*** (holding that 82-day delay is not prompt); ***Pappas, supra*** (holding that 55-day delay is not prompt).

Additionally, the trial court erred in determining that the second prong was met, as Citicorp's "clerical error" excuse proffered for its 219-day delay in responding to the Amended Complaint is not legitimate. The purported "clerical error" resulted in the Legal Department not being made aware of *six separate filings* that were served upon Citicorp at Citicorp's Delaware Office. Rather than an individual clerical error or oversight, these repeated failures,

which occurred over the span of several months, are more indicative of a much larger flaw in Citicorp's mail-forwarding system and/or internal communication procedures.

Indeed, Citicorp, a huge international corporation with considerable resources and experience in responding to legal actions against it, should have in place a functional system to monitor and respond to legal claims. **See Kelly v. Siuma**, 34 A.3d 86, 94 (Pa. Super. 2011) (in holding that the defendant failed to offer a legitimate excuse for its ten-month delay in filing an answer to the complaint, emphasizing that the defendant was "a corporate defendant, which should have in place the means to monitor its legal claims."); **Myers**, 986 A.2d at 177 (same); **Reid v. Boohar**, 856 A.2d 156, 162 (Pa. Super. 2004) (distinguishing between corporations and laypersons with regard to opening default judgments, and observing that corporations presumably have the means to monitor legal claims lodged against them). We cannot countenance holding a large corporation, which chooses to have a legal department separate from its corporate offices, to a *lower* standard than we would hold a layperson as concerns the failure to respond to process.[10] If we were to rule otherwise, large corporate defendants could cause interminable delays in litigation simply by choosing to have their legal departments separate from their corporate offices and

---

[10] In fact, large corporations could reasonably be held to a higher standard than a layperson. **See Kelly**, **supra**; **Myers**, **supra**.

utilizing a mail-forwarding system, upon which the corporation could easily place all accountability in the event of a failure to promptly reply to process.

Additionally, even though Citicorp's failure to timely respond to the Amended Complaint (or any of the Served Filings) was seemingly unintentional, this does not excuse its substantial delay under the circumstances of this case, as described above. *See Flynn*, 742 A.2d at 699 (holding that the defendant/company's unintentional failure to reply to the plaintiff's complaint due to a defective mail receipt system, which the defendant had allowed to remain in place for at least several months, was not a legitimate excuse for the delay that caused entry of the default judgment); *see also Autologic Inc. v. Cristinzio Movers*, 481 A.2d 1362, 1364 (Pa. Super. 1984) (where defendant/employer authorized one of its employees to determine whether mail should be forwarded to employer, and the employee failed to forward plaintiff's complaint, holding that defendant did not offer a legitimate excuse for failing to respond to the complaint, since it gave its employee authority to make the decision).

Concerning the third and final prong of the test to open a default judgment (pleading a meritorious defense), we need not address this prong, or consider the equities of the case, because we conclude that Citicorp has failed to establish the first and second prongs. *See McFarland v. Whitham*, 544 A.2d 929, 930 (Pa. 1988) (reversing on the sole basis that the trial court erred in concluding the defendant provided a justifiable excuse

for failing to respond to complaint in a timely manner); **U.S. Bank N.A.**, 982 A.2d at 997 (affirming denial of petition to open, even though trial court failed to analyze the third prong of a meritorious defense, since the first and second prongs were not met); **see also McCoy**, **supra** (stating that a petitioner must meet all three prongs of the test before a default judgment may properly be opened). Thus, even assuming that Citicorp pleaded a meritorious defense, the trial court improperly granted the Petition to Open.

In sum, we conclude that the trial court abused its discretion when it granted Citicorp's Petition to Open on the grounds that it was promptly filed and Citicorp had presented a legitimate excuse for its protracted delay in responding to Guntrum's Amended Complaint. Accordingly, we reverse the Summary Judgment Order and the Order to Open, and remand for the re-entry of a default judgment in favor of Guntrum in the amount of $125,558, plus interest.

Summary Judgment Order and Order to Open reversed. Case remanded for the re-entry of a default judgment against Citicorp and in favor of Guntrum. Superior Court jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2016

- 17 -